# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JON SARANTINOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.   10-cv-1196 |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

# O R D E R  &  O P I N I O N

This matter is before the Court on Plaintiff's Motion for Summary Judgment and Memorandum in Support (Docs. 16 & 17) and Defendant's Motion for Summary Affirmance and Memorandum in Support (Docs. 21 & 22).  For the reasons set forth below, Plaintiff's Motion for Summary Judgment (Doc. 16) is GRANTED in part and DENIED in part, and Defendant's Motion for Summary Affirmance (Doc. 21) is GRANTED in part and DENIED in part.

## BACKGROUND

### I.     Procedural History

On February 12, 2006, Plaintiff filed for Social Security and Supplemental Security Income disability benefits, (Doc. 17 at 1-2), alleging a disability onset date of February 21, 2006, his last date of employment, and alleging a disability

consisting of various impairments: Spina bifida[1] since birth (Doc. 14 at 12) and related severe bladder control problems, (Doc. 14 at 30 and 33-34); a clubbed left foot (Doc. 14 at 19 and 288); lost sensation in his feet and inability to differentiate where he is touched on his feet, (Doc. 14 at 316); a left leg that is one and one-half inches shorter than the right leg, which causes his hips to be out-of-line, (Doc. 14 at 20 and 51); and a history of ulcers on his feet including a non-healing one on his left foot with chronic osteomyelitis and right cellulitis in his right foot and leg (Doc. 14 at 216 and 268).

Plaintiff's application was initially denied on July 03, 2006. (Doc. 14 at 61) and reconsideration was denied on September 12, 2006. (Doc. 14 at 68). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on November 14, 2006. (Doc. 14 at 78). Plaintiff appeared with his attorney and a friend for a hearing held on March 24, 2009, before ALJ Peter J. Caras. (Doc. 14 at 6). On May 18, 2009, ALJ Caras issued a decision that Plaintiff was not disabled. (Doc. 14 at 54). Plaintiff filed a request for review of the ALJ's decision that same day. (Doc. 14 at 56). On April 26, 2010, the Appeals Council denied the request for review leaving the decision of the ALJ as the final decision of the Commissioner. (Doc. 14 at 1).

Plaintiff filed the instant action in this Court on June 23, 2010. On June 25, 2010, the Court ordered the documents stricken due to an unredacted format and directed the claimant to re-file with redacted format. (Doc. 17 at 1). The Plaintiff

---

[1] Spina bifida is a neural tube defect (a disorder involving incomplete development of the brain, spinal cord, and/or their protective coverings) caused by a failure of the fetus's spine to close properly during the first month of pregnancy. Spina bifida can cause bladder and bowel incontinence. National Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/spina_bifida_/spina_bifida.htm (last visited June 14, 2011).

re-filed on June 25, 2010, seeking review of the ALJ's decision. (Doc. 5). On December 6, 2010, Plaintiff filed his Motion for Summary Judgment (Doc. 17), and on April 7, 2011, Defendant filed its Motion for Summary Affirmance. (Doc. 22).

## II.    Relevant Work History

Plaintiff worked as a driver at a car wash from June of 1997 to March of 1999 for eight hours a day, six days a week. (Doc. 14 at 153-54). His job details included vacuuming cars, driving cars through the wash, and washing the windows. (Doc 14 at 154). Plaintiff's next job was a server at a fast food restaurant from February of 1999 to April of 1999 for six hours a day, three days a week. (Doc. 14 at 153 and 155). In this job, Plaintiff took orders, helped prepare food, and cleaned at night. (Doc. 14 at 155). Plaintiff next worked as an assistant carpet cleaner in a carpet cleaning service from June of 1999 to February of 2000 for ten hours a day, five days a week. (Doc. 14 at 153 and 156). Plaintiff drove to the job, moved furniture and cleaned, replaced furniture and cleaned traffic areas, and applied chemicals as needed. (Doc. 14 at 156). Plaintiff also worked in quality control in a cookie factory from March of 2000 to March of 2001 for eight hours a day, five days a week. (Doc. 14 at 153 and 157). Plaintiff was responsible for checking cookies for defects, specifically size and weight. (Doc 14. at 157).

Plaintiff had a job as a machinist in a machine shop from March of 2001 to March of 2002 for eight hours a day, five days a week. (Doc. 14 at 146). Plaintiff also worked as a general laborer in temporary service factories from April of 2002 to November of 2002 for nine hours a day, three days a week. (Doc. 14 at 146). Next, Plaintiff had a job as a material handler in a print shop from November of 2002 to

December of 2003 working ten hours a day, five days a week. (Doc. 14 at 146).

Plaintiff's final job was, again, a machinist in a machine shop from March of 2003 to February 2006 working ten hours a day, five days a week. (Doc. 14 at 146).[2] Plaintiff's job details included loading machines with wall parts, and then unloading the machine of the finished part, packing, and inspecting it. (Doc. 14 at 146). Plaintiff stated in this job he had to push, pull, and do lots of bending. (Doc. 14 at 146).

## III. Relevant Medical History

After quitting work in February 2006, Plaintiff has been treated or examined by various doctors. Plaintiff was examined by Dr. Budzenski as Medical Consultant for the State of Illinois' Disability Determination on June 7, 2006. (Doc. 14 at 299-304). In June of 2006, Plaintiff was treated by Dr. Smith for a grade III ulceration on his left foot for which there was a debridement, a surgery to remove lacerated, devitalized, or contaminated tissue. (Doc. 14 at 347). In October of 2006, Plaintiff saw Dr. Smith for a second debridement of the grade III ulceration on his left foot. (Doc. 14 at 349). Since this debridement, Plaintiff has treated the condition on his own at home. (Doc. 14 at 349). In February 2007, Plaintiff had follow up treatment with Dr. Smith who noted that Plaintiff was "doing very well." (Doc. 14 at 351). In May of 2007, Plaintiff visited Dr. Smith for a third debridement and a K-wire, a steel pin used to hold bone fragments together, was installed in his left foot. (Doc. 14 at 352-355). The K-wire was removed in June of 2007 due to continuing

---

[2] Plaintiff's jobs spanning from his first machinist job to his last machinist job were not included on his Work History Report (Doc. 14 at 153), but were in the Disability Report (Doc. 14 at 144-152). No job descriptions are given for these jobs with the exception of the second machinist job because it was Plaintiff's longest job.

problems after Plaintiff fell. (Doc. 14 at 356-361). Finally, Plaintiff's last doctor visit, prior to the ALJ's decision, was in January of 2008 for a fourth debridement of ulceration in his left foot. (Doc. 14 at 362-363). Since the ALJ's decision of May 18, 2009, Plaintiff has undergone further medical treatment: in June 2009 he had a spinal cord detethering surgery performed by Dr. Lin, to free up his spinal cord, because he was experiencing lower back and hip pain and having trouble with sitting and standing. (Doc. 14 at 369). Dr. Lin stated in a letter that Plaintiff, "is not able to perform a job on a regular continuing basis, eight hours a day, five days a week, or equivalent." (Doc. 14 at 364). This information was not before the ALJ, but it was before the Appeals Council as new medical evidence. (Doc. 14 at 209). [3]

## IV. Hearing Testimony

On March 24, 2009, ALJ Caras held a hearing on Plaintiff's application for benefits, at which Plaintiff was represented by an attorney, William Lasarelle, and accompanied by a friend, Melissa Short, as a witness. (Doc. 14 at 6). A Vocational Expert, Ms. Peters, also appeared to testify as to the type of work and jobs that would be available to Plaintiff. (Doc. 14 at 6, 8-10, and 35-40).

Plaintiff testified that he was born with spina bifida and that this is the direct cause of his bladder control problems. (Doc. 14 at 12). Plaintiff further

---

[3] Because the evidence of Plaintiff's detethering surgery and Dr. Lin's report was not before the ALJ, and the Appeals Council denied review of Plaintiff's case, the Seventh Circuit has held that the Court may only consider it if Plaintiff 1) filed a petition to re-open his case, 2) asked for a review of the Appeals Council's refusal to review the ALJ's decision, or 3) requested remand to Social Security Administration to consider the new evidence pursuant to 42 U.S.C. 405 (g). *Eads v. Sec'y of Dept. of Health & Human Svcs.*, 983 F.2d 815, 817 (7th Cir. 1993). However, Plaintiff has not done any of these things here. Accordingly, the Court may not consider this evidence in its review of the ALJ's decision. *Eads*, 983 F.2d at 817; *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995).

testified that he has had four foot surgeries, three on his left for a recurring ulcer and one on his right for another ulcer. (Doc. 14 at 14). Plaintiff also testified that he had a clubbed left foot and that his left leg was one and half inches longer than his right leg. (Doc. 14 at 19-20). According to Plaintiff, because of the condition of his feet and legs, he must walk on the outside of his feet and has therefore developed bad calluses on his feet which cause him pain. (Doc. 14 at 17-18). Plaintiff also stated that he has tried wearing foot braces which only caused him more pain and that he has not tried any other assistive devices to help him with walking. (Doc. 14 at 27).

Concerning pain medication, Plaintiff testified that he only takes aspirin for the pain and has not requested pain medication from his doctor. (Doc. 14 at 18). Plaintiff does not want pain medication because he believes it to be a narcotic. (Doc. 14 at 18). He stated, "I just can't deal with pain medication." (Doc. 14 at 18).

Plaintiff also testified that he is uncomfortable when he sits because of pressure on his hips and lower back. (Doc. 14 at 20). He half lays to his right when sitting on a couch to be comfortable. (Doc. 14 at 21).[4] As for his bladder control problems, Plaintiff testified he tried to wear diapers, but that they caused bad chaffing so he discontinued using them. (Doc. 14 at 27). Plaintiff also noted that he

---

[4] This Court questions Plaintiff's ability to perform sedentary work if he has trouble with sitting. However, it appears that neither the ALJ, the Vocational Expert, nor the Plaintiff have given Plaintiff's sitting position and related discomfort any significance in determining his ability to work. The ALJ did not include this as a limitation in his hypothetical to the Vocational Expert, and the Plaintiff's attorney did not seek to add it at that time. Further, Plaintiff has not raised the issue on appeal to this Court.

is depressed because of how other people around him look or do not look at him. (Doc. 14 at 21).

With regard to activities, Plaintiff testified that he tries to help with the housework and to keep his kids in line. He stated, "I try to do with the stuff I can in like the living room and the kitchen." (Doc. 14 at 23). He keeps his children in line mostly by yelling and having them stand in time out. (Doc. 14 at 23). Plaintiff also testified that he had a previous sit down job, but that all the work with his hands made him uncomfortable because he was sitting down on his back and there was a pinching between his shoulders and neck from the repetition of movements. (Doc. 14 at 24).

Plaintiff's girlfriend, Melissa Short, also testified on his behalf. Plaintiff and Ms. Short have been dating for seven years and have three children together. (Doc. 14 at 28). Ms. Short testified that she drives Plaintiff to work and that she must sometimes bring him a change of clothes or drive him home to change his clothes because of his bladder problems. (Doc. 14 at 34). With regard to Plaintiff's ability to stand and walk, Ms. Short testified that Plaintiff has trouble doing so. Ms. Short testified specifically, that when the Plaintiff stands he weaves and wobbles and it seems "like the balance isn't there." (Doc. 14 at 31). Further, Ms. Short testified that Plaintiff limps really bad when he walks and that his ankle will roll easily and cause him to fall. (Doc. 14 at 31). As for Plaintiff's mental state, Ms. Short testified that Plaintiff is depressed. (Doc. 14 at 29). She believes that he is depressed because he can be agitated and anxious. (Doc. 14 at 29).

Ms. Peters, the Vocational Expert, testified as to the type of work that would be available to Plaintiff. The ALJ gave Ms. Peters a hypothetical person similar to Plaintiff and asked what kind of work would be available to such person. (Doc. 14 at 8-10). Ms. Peters testified that the hypothetical person could be engaged in sedentary work, in which the person was standing or walking no more than two hours in a work day. (Doc. 14 at 10). Ms. Peters further testified as to the kind of jobs that would be available to the hypothetical person performing sedentary work. These jobs included assembly type work, for which there were approximately 650 jobs on a local basis and 6,200 positions statewide, packaging jobs for which there were approximately 475 positions on a local basis and 5,000 positions statewide, and sorting jobs for which there were approximately 550 positions. (Doc. 14 at 36-37).

Plaintiff's attorney asked Ms. Peters to comment on the type of jobs available if such person was limited in grasping or unable to remain on task for 80 percent of the work day. (Doc. 14 at 37). Ms. Peters testified that it would eliminate those positions. (Doc. 14 at 37). Plaintiff's attorney also asked Ms. Peters what the typical employer's tolerance for breaks and missed days would be. (Doc. 14 at 38). Ms. Peters testified that employer's tolerance may vary depending on the length and frequency of the breaks and that no more than one to two missed days per month would be tolerated. (Doc. 14 at 38). Based on Ms. Peter's testimony, frequent and/or long breaks would reduce the number of jobs available. Finally, the Plaintiff's attorney asked if jobs would be eliminated if due to bladder control he was prohibited from working with products that would be placed in the stream of

commerce. (Doc. 14 at 39).  Ms. Peters testified that it would eliminate those jobs because typically the things being worked with would enter the stream of commerce and reach the general public. (Doc. 14 at 39).

## V.    ALJ's Decision

In assessing a claim for benefits, an ALJ applies the five-step analysis set forth in 20 C.F.R. § 404.1520: 1) if the claimant is working; 2) if not, do claimant's impairments significantly limit claimant's ability to work and; 3) if so, is claimant impaired in a way that meets any of a list of impairments presumed to preclude gainful work; if claimant's impairments do not meet a listing, then the ALJ considers whether 4) claimant has the RFC to perform claimant's past work or, if not; 5) if there is other work claimant can perform. *Taylor v. Barnhart*, 189 Fed.Appx. 557, 561 (7th Cir. 2006).

### A.    Insured Status and Impairments

ALJ Caras issued his decision on May 18, 2009. (Doc. 14 at 48-55).  He first determined that the Plaintiff met the insured status requirements of the Social Security Act, 42 U.S.C. 405(g), through December 31, 2004, and that he has not engaged in substantial gainful activity since his alleged onset date of February 21, 2006. (Doc. 14 at 50).  He then found that Plaintiff suffered from spina bifida, congenital bilateral foot malformation, right Charcot foot deformity and left clubfoot deformity. (Doc. 14 at 50).  He noted that Plaintiff's impairments caused more than minimal limitations in the claimant's ability to work.

Next, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal any of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 that would automatically render him disabled. (Doc. 14 at 50). The ALJ found that Plaintiff's musculoskeletal condition did not satisfy a listed impairment because he retained the ability to ambulate and perform fine and gross movements effectively. (Doc. 14 at 50). Accordingly, the ALJ proceeded to consider Plaintiff's RFC under step-four of the analysis.

**B.    Residual Functional Capacity[5] ("RFC")**

The RFC is an assessment of what work-related activities the claimant can perform despite claimant's limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). After determining that none of the listings applied to Plaintiff, the ALJ found that Plaintiff has the RFC to perform sedentary work, with the following exceptions: 1) he must alternate between sitting and standing every thirty minutes, 2) he cannot climb ladders, ropes or scaffolds, 3) he can do minimal climbing of ramps or stairs and minimal balancing, stooping, kneeling, crouching, or crawling, 4) he cannot work on uneven surfaces or around unprotected hazardous machinery, 5) he cannot do work involving bilateral foot controls, and 6) he is limited to unskilled, one or two-step tasks with slight problems interacting with others. (Doc. 14 at 51). In making this finding, the ALJ stated that he considered all of Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence, in accordance with 20 C.F.R. 404.1529 and 416.929, as well opinion evidence, in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927. (Doc. 14 at 51).

---

[5] Dr. Lin performed spinal detethering surgery on Plaintiff after the hearing date. In determining RFC, the ALJ did not have Dr. Lin's letter stating that Plaintiff is not able to perform a job on a regular continuing basis, eight hours a day, five days a week, or equivalent. (Doc. 14 at 364).

Following a review of the testimony, the ALJ found that Plaintiff's medically determinable impairments could reasonably produce the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible to the extent the statements were inconsistent with the RFC assessment. (Doc. 14 at 51). The ALJ stated that the Plaintiff has serious medical problems which limit his work capacity, but that the medical evidence is not consistent with a complete inability to work since February 21, 2006. (Doc. 14 at 51-52).

The ALJ did not consider medical reports from Dr. Mitchell in 2003 and 2004. At that time, Dr. Mitchell repeatedly told Plaintiff that he would need to be non-weight bearing in order for his foot problems to heal. (Doc. 14 at 216-218, 230). Dr. Mitchell told Plaintiff that "he is at risk of the wound not healing and the ulcer increasing in size, which could lead to amputation or partial amputation." (Doc. 14 at 230). Also, the ALJ did not mention Dr. Smith's May 2005 opinion that due to Plaintiff's significant foot deformities Plaintiff was "unable to continue working at his regular job." (Doc. 14 at 315).

The ALJ took the opinion of Dr. D'Souza, an orthopedic surgeon, that Plaintiff should not work as a precaution to prevent further ulcerations, rather than an inability to work in February of 2006. (Doc. 14 at 52). The ALJ failed to mention that Dr. D'Souza believed further ulcerations would lead to amputation-type surgeries on Plaintiff's feet or ankles. (Doc. 14 at 292). Also, the ALJ relied extensively on Dr. Budzenki's June 2006 consultation examination when making his determination. (Doc. 14 at 52). Dr. Budzenki found that Plaintiff could

ambulate at normal speed and that his gait was "somewhat unmeasured" but not unsteady. (Doc. 14 at 52). He also found that Plaintiff has limited motion in both ankles, that his Achilles reflexes were absent bilaterally, and that there was marked atrophy of Plaintiff's lower legs; however, he noted that Plaintiff could get on and off the examination table without difficulty, and bend over and attend to footwear. (Doc. 14 at 52). Dr. Budzenski found that Plaintiff's dorsolumbar spine showed good motion and negative straight leg raising. (Doc. 14 at 52). In addition, Plaintiff could not perform posture/motor/gait testing, but could perform a full squat maneuver without difficulty. (Doc. 14 at 52). Dr. Budzenski noted no problems in the areas of bladder control or problems with the Plaintiff's hand. (Doc. 14 at 52). Finally, the ALJ relied on Dr. Smith's February 2007 assessment in which he noted that Plaintiff was "doing very well." (Doc. 14 at 52). The ALJ does note Plaintiff's May of 2007 visit for debridement and insertion of a K-wire, the removal of the K-wire in June of 2007, and the Plaintiff's last visit for debridement of his left ulcer in January of 2008 all with Dr. Smith.

In addition, the ALJ found that relevant credibility factors failed to support a finding of complete disability. (Doc. 14 at 52). The ALJ noted that Plaintiff did not use stronger medicine for the pain and that he had not visited the hospital since his alleged onset date. (Doc. 14 at 52). The ALJ found that not using assistive devices (although Plaintiff did use foot braces in the past) and his failure to continue treatment beyond office visits such as physical therapy were not consistent with a disability. (Doc. 14 at 53). The ALJ also considered the fact that Plaintiff stated that he has had his physical problems for many years, yet was able to continue

working until 2006, and the ALJ found no evidence of significant worsening of his physical condition since that time. (Doc. 14 at 53).[6]  Based on these findings, the ALJ arrived at the RFC noted above.

## C.  Ability to Work

After finding this RFC, ALJ Caras determined that Plaintiff would not be able to perform past relevant work because that past relevant work required more than a sedentary exertion. (Doc. 14 at 53).  However, the ALJ also found that transferability of jobs skills would not be an issue because Plaintiff's past relevant work was unskilled. (Doc. 14 at 53).  Accordingly, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff could perform. (Doc. 14 at 53). These jobs include assembler, packager and sorter. (Doc. 14 at 53).  The ALJ relied on the testimony of a vocational expert to find that Plaintiff could function given his physical impairments. (Doc. 14 at 54).

Based on these findings, the ALJ found that the claimant had not been under a disability, as defined by the Social Security Act, from February 21, 2006, through the date of the decision. (Doc. 14 at 54).

---

[6] As previously noted, Plaintiff's medical records from 2006 until the date of the ALJ hearing indicated only the following problems: 1) ulcerations with debridement surgery and 2) the insertion and removal of a K-wire.  After the hearing, Plaintiff underwent spinal cord detethering surgeries, to free up his spinal cord.  His treating doctor, Dr. Lin, stated in a letter after the surgery that Plaintiff, "is not able to perform a job on a regular continuing basis, eight hours a day, five days a week, or equivalent." (Doc. 14 at 364).  However, as previously discussed, because the post-hearing evidence was not before the ALJ and Plaintiff has not properly raised it as an issue on appeal, the Court cannot consider this evidence. *See Eads*, 983 F.2d at 817.

## DISCUSSION

## I.     Legal Standard

To be entitled to disability benefits under the Social Security Act, a claimant must prove that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).   The Commissioner of Social Security uses a five-step sequential analysis to determine whether the claimant is disabled. *See Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999).

In the first step, the Commissioner must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not under such employment, the Commissioner of Social Security proceeds to the next step.  At the second step, the Commissioner evaluates whether the claimant has a medically determinable impairment, or combination of impairments, that is severe, and determines the duration of said impairment. 20 C.F.R. 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has an impairment that significantly limits his physical or mental ability to do basic work activities, the Commissioner will proceed to the next step.  At the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to prevent any gainful work; and, if the impairments meets or medically equals the criteria of an impairment listed, he declares the claimant eligible for benefits. 20 C.F.R. 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Before considering steps four and five, the Commissioner must determine the claimant's residual functional capacity (RFC). 20 C.F.R. 404.1520(e) and 416.920(e). RFC is the ability to do physical and mental work activities on a sustained basis despite limitations from his impairment, including ones not considered severe. 20 C.F.R. 404.1520(e), 404.1545, and 416.920(e).

At the fourth step, the Commissioner must determine whether the claimant has the RFC to perform the requirements of his past relevant work within the last fifteen years, or fifteen years prior to the date that disability must be established. 20 C.F.R. 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot pursue his past relevant work, then, at step five, the Commissioner evaluates whether the claimant is able to do any other work in the economy considering his RFC, education, and work experience. 20 C.F.R. 404.1520(a)(4)(v), 416.920(a)(4)(v).

The burden of proof for disability rests upon the claimant. *McNeil v Califano*, 614 F.2d 142, 145 (7th Cir. 1980). However, once the claimant demonstrates an impairment of sufficient severity so as to preclude him from pursuing his past work, the burden shifts to the Commissioner to show the existence of substantial gainful employment, that the claimant may engage in. *Id*.

If the claimant disagrees with the ALJ's decision, the claimant may file an appeal with the Appeals Council. (Doc. 14 at 45). If the Appeals Council denies review of a case, the ALJ's decision becomes the final decision of the Social Security Commissioner. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). When the Appeals Council denies review, evidence submitted for the first time to the Council, though

technically part of the record, cannot be considered in determining the correctness of the ALJ's decision. *Id.*

When a claim reaches federal district court, the court's review of the case is governed by 42 U.S.C. § 405(g), which provides that, "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In a substantial evidence determination, the court will review the entire record to determine if there is relevant evidence adequate to support the ALJ's conclusion. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). The court will not decide the facts anew, reweigh evidence, or substitute its own judgement for that of the ALJ. *Id.*

## II. Analysis

Plaintiff argues that 1) the ALJ erred in not properly analyzing whether Plaintiff met the listing for musculoskeletal systems, 2) the ALJ erred in not following the treating physician rule, 3) the hypothetical person to the Vocational Expert did not encompass all of Plaintiff's limitations, and 4) the ALJ erred in stating that credibility factors fail to support a finding of complete disability. Local Rule 8.1(D) requires Plaintiff's Motion for Summary Judgment to "state with particularity which findings of the Commissioner are contrary to law." Further, the Plaintiff is to "identify the statute, regulation or case law under which the Commissioner allegedly erred" and "cite to the record by page number the factual evidence that supports plaintiff's position."

**A.     Failure to find Plaintiff met the listing for musculoskeletal systems**

The ALJ is to review impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Plaintiff has the burden of showing that his impairments would constitute a listing and that his impairments satisfy all the various criteria in the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).  However, the ALJ should mention the specific listings he is considering and his failure to do so, if combined with a "perfunctory analysis," may require a remand. *Id.*  The ALJ need not provide a written evaluation of every piece of evidence and testimony, however the ALJ must "build a logical bridge from evidence to his conclusion." *Taylor*, 189 Fed.Appx. at 561.  An ALJ must confront the evidence in the record that does not support the ALJ's conclusion and explain why it was rejected. *Id*. at 561-62.   The ALJ's failure to evaluate any evidence that could potentially support Plaintiff's claim does not provide much assurance that the ALJ adequately considered Plaintiff's case. *Ribaudo*, 458 F.3d at 584.

The Defendant states that Plaintiff has waived his listing arguments because the Plaintiff failed to mention the criteria of any listing, or show how he meets a listing. (Doc. 22 at 6).  However, in Plaintiff's Memorandum in Support of his Motion for Summary Judgment, Plaintiff specifically discusses listing 1.04 and the reasons why he meets it. (Doc 17 at 4-8).  While *Ribaudo* does place the burden of proof on Plaintiff to show that he meets a listing, *Ribaudo* also requires that the ALJ must give more than a "perfunctory analysis" of the listing he is considering. 458 F.3d at 583-84.   In the case at bar, the ALJ considered Plaintiff's

musculoskeletal condition and stated that Plaintiff does not satisfy a listed impairment because Plaintiff retains the ability to ambulate and perform fine and gross movements effectively. (Doc. 14 at 50).

The ALJ only provided a two sentence reason for why Plaintiff does not meet a listing.  While the ALJ did not need to discuss all medical evidence of why Plaintiff did not meet a medical listing, he must still "build a logical bridge from evidence to his conclusion" as required in *Taylor*.  He did not do so.  The ALJ did not examine Plaintiff's impairments and why Plaintiff did not meet a listing.  By not doing so, it appears that the ALJ did not give more than a "perfunctory analysis." With no analysis of Plaintiff's impairments or the applicable listings, the ALJ has not given any reason for his conclusion based on the evidence he had before him. The ALJ also did not consider any evidence that could support Plaintiff's claim, further strengthening Plaintiff's argument that the ALJ did not adequately consider Plaintiff's case under step-three of the analysis for a listing. Accordingly, this case must be remanded for further consideration of whether Plaintiff meets listing 1.04 due to his diagnosis of spina bifida.[7]

**B.    Failure to follow the treating physician rule**

Plaintiff also argues that the ALJ failed to comply with 20 C.F.R. 404.1527 in not according weight to the opinion of the claimant's treating physician.

> "Generally the SSA gives more weight to opinions from the treating physician, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of

---

[7] Despite the fact that this court is remanding the matter to the Commissioner of Social Security to determine whether Plaintiff meets Listing 1.04, the Court will still consider Plaintiff's other arguments in the event that no listing is found to be met on Remand.

medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. 404.1527(d)(2).

The opinion of a treating physician is entitled to controlling weight only if supported by objective medical evidence. *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010). The ALJ is not required to give controlling weight to the ultimate conclusion of disability—a finding specifically reserved for the Commissioner. *Id*. Plaintiff claims that four treating physicians want him to remain off his feet and be non-weight bearing and state that he should be found disabled. (Doc. 17 at 9). The ALJ did find that Plaintiff has serious medical problems which limit his work capacity, but that the medical evidence is not consistent with a complete inability to work. (Doc. 14 at 51-52). The ALJ based his decision on Dr. D'Souza's report which stated that keeping off his feet was "a precaution." (Doc. 14 at 52). The ALJ found that Plaintiff would be able to work jobs that only occasionally required him to be on his feet. Looking only at Dr. D'Souza's February of 2006 report, these determinations seem reasonable because, at the time Plaintiff was assessed by Dr. D'Souza, he was working ten hour days as a machinist. (Doc. 14 at 292 and 145-146). The ALJ also relies on Dr. Smith's February of 2007 assessment of Plaintiff as "doing very well" in determining that Plaintiff's condition would allow him to work.

However, the ALJ has not sufficiently connected the dots between Plaintiff's impairments, supported by substantial evidence in the record, and the RFC finding that Plaintiff could be on his feet up to two hours a day. *See Young*, 362 F.3d at

1002-1003.  The RFC falls short because it fails to account for the evidence in the record regarding Plaintiff's ongoing ulcer problems in his feet. *See id*.  As noted above, when determining Plaintiff's RFC, the ALJ did not adequately asses all of the evidence on record from Dr. Mitchell, Dr. Smith, and Dr. D'Souza.  The ALJ disregarded Dr. Mitchell's testimony that if Plaintiff continues to be on his feet, Plaintiff may need to have amputation. (Doc. 14 at 230).  Dr. Mitchell told Plaintiff several times to remain non-weight bearing. (Doc. 14 at 216-218 and 230).  The ALJ also disregarded Dr. Smith's assessment that Plaintiff could not work at his regular job. (Doc. 14 at 315).  The ALJ relies on Dr. D'Souza's assessment noted above, but does not include that this prevention is to prevent ulcerations that could lead to amputation. (Doc. 14 at 292).  The ALJ does note that Plaintiff saw Dr. Smith multiple times in 2007 for debridement of his ulcerations and to have a K-wire installed and later removed.  However, it appears that the ALJ does not give much weight to the fact that Plaintiff still needs to have treatment for his ulcerations.

Plaintiff was told by multiple doctors that he should not be on his feet, two of whom warned that amputation could be a result.  This Court is not inclined to force Plaintiff to work if the result would be amputation of Plaintiff's foot.  Accordingly, this matter should be remanded to find if Plaintiff can be weight bearing for two hours of a work day, if at all, without suffering ulcerations which would require amputation.

## C. Failure to encompass all Plaintiff's limitations in the hypothetical presented to the vocational expert

Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). The hypothetical need not include all the physical limitations, provided that the vocational expert had the opportunity to learn of applicant's limitations through, for example, an independent review of the medical records or through other questioning at the hearing. *Id.* If the hypothetical does not include all the applicant's limitations, there must be some amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations. *Id.*

In the present case, the Vocational Expert was present throughout the hearing, and had the chance to hear all testimony regarding Plaintiff's physical limitations. Therefore, in accordance with *Young*, the Vocational Expert had the opportunity to learn of Plaintiff's limitations and the hypothetical did not need to include all the physical limitations.

Further it appears as though the ALJ's hypothetical was sufficient. The ALJ first gave the Vocational Expert a hypothetical looking at a man with a limited education of ten years. (Doc. 14 at 9) The ALJ downgraded Dr. Budzenski's assessment of medium work to sedentary work. (Doc. 14 at 9). Also, the ALJ stated that the ambulation should not exceed fifteen minutes every hour. (Doc. 14 at 9). The Vocational Expert agreed that this would be consistent with sedentary work. (Doc. 14 at 10).

After hearing Plaintiff's testimony and that of the witness, the ALJ gave the Vocational Expert a second hypothetical question. The ALJ included that the Plaintiff be limited to sedentary work with no ladders, ropes, or scaffolds and with minimal climbing, balancing, stooping, kneeling, crouching and crawling. (Doc. 14 at 36). He further included no concentrated exposure to uneven surfaces, no unprotected heights, and no unprotected hazardous machinery. (Doc. 14 at 36). The ALJ stated that the person should alternate between sitting and standing every thirty minutes and only have occasional use of bilateral foot controls. (Doc. 14 at 36). The ALJ specifically took into account pain and mental impairments and said that work should be unskilled and limited to one and two step operations, with only mild or slight interaction with people. (Doc. 14 at 36). The ALJ further included washroom accessibility as a limitation. (Doc. 14 at 36).

Accordingly, it appears that the ALJ did include the Plaintiff's limitations in his hypothetical to the Vocational Expert. While Plaintiff alleges that the ALJ did not take his incontinence into account (Doc. 17 at 13), the ALJ clearly stated that washroom accessibility was a limitation for Plaintiff. (Doc. 14 at 36). The Plaintiff also alleges that the ALJ did not take into account his physical impairments regarding his feet. (Doc. 17 at 10-13). However, the ALJ did state that walking should be limited to unskilled sedentary work and should not have concentrated exposure to uneven surfaces and should be able to alternate sitting and standing every thirty minutes. (Doc. 14 at 36).

In addition, Plaintiff's lawyer examined the Vocational Expert. In his examination, the Plaintiff's attorney asked the Vocational Expert what would be the

effects if Plaintiff was limited in occasional use of the bilateral hands for reaching, gripping and grasping and what would be the effects of frequent unscheduled breaks due to incontinence. (Doc. 14 at 37). However, Dr. Budzenski's report states that Plaintiff does not have trouble with either incontinence or reaching, gripping, and grasping. (Doc. 14 at 302). Plaintiff did not testify as to his ability to not reach, grip, or grasp in the hearing. Thus, the ALJ did not include this limitation in the hypothetical. While a dispute remains as to the Plaintiff's incontinence problem, the ALJ included washroom accessibility as a limitation in his hypothetical taking into account Plaintiff's potential problem with incontinence. (Doc 14 at 36).[8]

The ALJ appears to have included Plaintiff's limitations in his hypothetical and the Vocational Expert was present for the hearing and had opportunity to learn of Plaintiff's disabilities. Further the ALJ considered the relevant medical testimony in his hypothetical and the Vocational Expert returned an exceptional number of jobs the Plaintiff could perform. Accordingly, the Court cannot find that the ALJ was in error with regard to the hypothetical person he presented to the Vocational Expert in order to determine whether Plaintiff could find substantial gainful employment.[9]

---

[8] As previously noted, neither the ALJ nor the Plaintiff's attorney asked the Vocational Expert about what further limitations would be posed by Plaintiff's inability to sit comfortably. However, Plaintiff has not raised this issue as a point of error in the ALJ's hypothetical.

[9] However, if the RFC is flawed, the Hypothetical question presented to the Vocational Expert would be flawed as well. *See Young*, 362 F.3d at 1004. When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that the Plaintiff can adjust to other work in the economy cannot stand. *See id.* If the RFC is flawed because

**D. Error in stating that credibility factors fail to support disability**

Finally Plaintiff argues that the ALJ erred in finding that credibility factors fail to support a finding of complete disability. Plaintiff bases his argument on a claim that the ALJ erred by not giving credibility to Plaintiff's statements regarding his levels of pain. The Court reviews an ALJ's credibility determination with deference, for an ALJ, not a reviewing court, is in the best position to evaluate credibility. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). The Court will reverse that determination only if it so lacking in explanation or support that it is found "patently wrong." *Id*.

The ALJ first found that Plaintiff lacks credibility because, while Plaintiff claimed to experience bladder and bowel incontinence, Dr. Budzenski stated that Plaintiff had adequate bladder and bowel control. (Doc. 14 at 52). Dr. Budzenski noted no signs of odor or incontinence and remarked that Plaintiff denied needing to wear any special garment or pad to help deal with incontinence on the day he was examined. (Doc. 14 at 52).

In addition to alleging incontinence, Plaintiff also argued that his feet conditions would preclude him from pursuing his past relevant work. While the ALJ acknowledged that Plaintiff has significant medical conditions that would prevent him from performing any past relevant work (Doc. 14 at 51), he found that Plaintiff's RFC would allow him to perform sedentary work. Naturally the pain alleged by Plaintiff is the cause for his inability to work long periods of time on his feet. Plaintiff testified that he "cannot deal with pain medicine," (Doc. 14 at 18) and

Plaintiff cannot be on his feet for two hours a day, then a new hypothetical question must be presented to a Vocational Expert on remand.

expects this court to find that his pain should preclude him from working. However, the ALJ found that the fact that Plaintiff only takes aspirin for pain rather than stronger codeine or morphine based analgesics usually prescribed for severe pain was relevant to his credibility. (Doc. 14 at 52). Because the Court is deferential to the ALJ's credibility finding, it cannot find that his opinion regarding Plaintiff's credibility was in error.[10]

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 16) is GRANTED in part and DENIED in part, and Defendant's Motion for Summary Affirmance ( Doc. 21) is GRANTED in part and DENIED in part. This case is REMANDED to the Commissioner of Social Security to consider whether Plaintiff meets Listing 1.04, and, if the ALJ determines that such listing is not met, to reconsider Plaintiff's Residual Functional Capacity in light of the expressed concerns of the Court and, if necessary, to pose a new hypothetical to the Vocational Expert in accordance therewith.  IT IS SO ORDERED.

---

[10] While the Court is deferential to the ALJ's determination of Plaintiff's credibility, this does not imply that it agrees with his assessment of Plaintiff's overall disability.  As previously mentioned, the ALJ did not properly consider objective medical evidence of Plaintiff's feet conditions.  On remand, a fuller consideration of such medical evidence may, or may not, result in a finding of greater credibility for Plaintiff. However, based upon the current record before it, and the fact that the ALJ observed the Plaintiff and heard him testify, the Court cannot determine that his assessment of Plaintiff's credibility was "patently wrong." *See Similia*, 573 F.3d at 517.

Entered this <u>24th</u> day of June, 2011.

                                                  s/ Joe B. McDade
_____
                                           JOE BILLY McDADE
                         United States Senior District Judge